IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEIGHTON CHUNG et al., | : |
| | : |
| Plaintiffs, | : |
| v. | : 3:14-CV-00490 |
| | : (Judge Mariani) |
| WYNDHAM VACATION RESORTS, INC. | : |
| | : |
| Defendant. | : |

## OPINION AND ORDER

Presently before the Court is Plaintiffs' Unopposed Motion for Approval of Collective Action Settlement (Doc. 72). The settlement stems from a class/collective action lawsuit alleging that Defendant Wyndham Vacation Resorts, Inc. violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, by "mandat[ing] that Plaintiff and other Sales Employees report 40 or fewer work hours per week even though these employees actually work[ed] over 40 hours" and that "on those workweeks when Plaintiff and other Sales Employees actually entered more than 40 hours into the company timekeeping system, Defendant's managers usually would alter the timekeeping entries to eliminate the overtime work." (Doc. 1, ¶¶ 12-13). Originating plaintiff Leighton Chung, individually and on behalf of the opt-in plaintiffs, and Defendant have now agreed to settle the above-captioned action on

the terms and conditions set forth in the "Settlement Agreement and Release" (hereinafter "the Agreement") (Doc. 72-3).

On September 9, 2014, the Court issued a memorandum opinion and order conditionally certifying, pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), a putative FLSA collective consisting of "[a]ll sales employees (including, inter alia, Sales Representatives) employed by Defendant at the Wyndham Vacation Resorts Shawnee Village ('the Shawnee Facility') during any workweek within the past three years." (Docs. 44, 45). The order also approved the proposed notice and consent forms and several other notice protocols. The notice process resulted in an FLSA collective of 35 plaintiffs, including Chung. Following discovery and "weeks of arms-length negotiations", a settlement was reached. (Pl.'s Brief in Supp. of Mot., Doc. 74, at 2).

On May 19, 2015, the Court held a hearing to determine whether the settlement constituted a fair and reasonable resolution of a *bona fide* dispute.

The Court, having heard argument in support of the settlement, and upon consideration of Plaintiff's Motion (Doc. 72), the Agreement (Doc. 72-3), the Declaration of Peter Winebrake (Doc. 73), the accompanying brief (Doc. 74), and all other submissions presented with respect to the settlement, enters the following findings:

1. The Court has jurisdiction over the subject matter and personal jurisdiction over the parties to this action, including the members of the class, pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. The Court confirms for settlement purposes the certification of this action as a collective action and the collective as those who previously joined the action pursuant to 29 U.S.C. § 216(b). The collective is defined as the individuals identified in Exhibit A of the Agreement. This group consists of all sales employees employed by Defendant at the Wyndham Vacation Resorts Shawnee during any workweek he or she was employed as a salesperson after March 14, 2011.

3. The Agreement and all of its exhibits (as filed with the Court) are incorporated into this Final Opinion and Order, including all definitions and terms set forth in the Agreement.

4. The total settlement amount is $180,000.00 in accordance with the terms of the Agreement of which Plaintiffs will share in $115,000.00. The settlement fund is non-reversionary.

5. The payment amount equates to $54.61 for every week that a plaintiff worked, which is the equivalent of 2.5 hours of paid overtime per week. The average individual payment is $3,285.71 and median individual payment is $2,457.34.

6. In response to the memoranda mailed to each collective member on May 1, 2015, describing the settlement and his or her anticipated individual payment amount, no opt-in plaintiff objected to the settlement agreement. (*See* Declaration of Peter Winebrake, Doc. 73, ¶¶ 24-25).

7. After considering the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) and discussed extensively by counsel for Plaintiff during the fairness hearing, the Court approves the settlement with respect to the payment of $115,000.00 to the Plaintiffs as fair and reasonable. The *Girsh* factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal quotations and alterations omitted)).

8. In particular, the Court notes the significant risk that Plaintiffs face in proving damages given the potential difficulties in establishing those weeks in which a Plaintiff's actual work hours exceeded the 40-hour overtime threshold; a problem which Plaintiffs' counsel characterized as the "fundamental weakness in this case" at the fairness hearing.

9. Absent settlement, Plaintiffs risk this Court rendering one or more decisions in favor of Defendant. Currently pending before the Court is Defendant's Motion to Dismiss Untimely Consents (Doc. 64), resolution of which may result in one opt-in plaintiff being dismissed. Defendant also asserts that it would move to decertify the

collective, and is confident it would be successful. Defendants may additionally file a motion for summary judgment. The multitude of motions, complexity of the issues they raise, and the length of time the parties would wait for each motion to be resolved, as well as the potential difficulties Plaintiffs admit they would face in establishing liability and avoiding decertification of the collective, all strengthen counsel's submission to the Court that this is a fair and reasonable settlement and is in the best interests of the plaintiffs.

10. While the Court notes that the ability of the defendant to withstand a greater judgment weighs against approval of the settlement, in light of the considerations enumerated by the plaintiffs in both the brief in support of the motion and those stated by Plaintiffs' counsel during the fairness hearing, this particular factor is of little consequence to the approval of the settlement agreement.

11. Plaintiff's request that Chung receive a $3,000.00 service award, which is included in the proposed settlement agreement, is approved as reasonable and well-within the realm of service awards in similar actions. Chung has purportedly "been a reliable and diligent representative of the collective" and counsel for Plaintiff represented to the Court at the fairness hearing that Chung worked to inform his co-workers of the case, thereby allowing Plaintiff's counsel to obtain declarations and further support his motion for conditional certification of the collective.

12. The application by Winebrake & Santillo, LLC for $65,000.00 in attorney's fees, litigation expenses, and claims administration expenses is approved. Pursuant to Third Circuit precedent, this Court has considered

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

See, In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The Court also performed a "cross-check" of the percentage fee award against the "lodestar" method as recommended by the Third Circuit. See id. at 305 (citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998)). Here, Plaintiff's counsel has represented that the expenses total $7,844.00, leaving $57,156.00 for payment of the requested attorney's fees. (Doc. 74, at 11). These fees equal 31.75% of the total settlement fund. This percentage is consistent with Middle District Courts' prior decisions in similar cases as well as with comparable cases throughout the Third Circuit. See, e.g., Creed v. Benco Dental Supply Co., 2013 WL 5276109, at *6 (M.D. Pa. 2013) ("an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit"); see also Martin v. Foster Wheeler Energy Corp., 2008 WL 906472, at *5 (M.D. Pa. 2008) (collecting

cases). The firm has already successfully argued for conditional certification of the collective, engaged in discovery which included Defendant's production of timekeeping and payroll data for each plaintiff, and participated in settlement negotiations, all of which resulted in over 191 attorney hours. Counsel's skill and experience, provided on a pure contingency fee basis and applied to a case that would present a multitude of complex, risky, and lengthy motions and proceedings, along with the lack of any objections by members of the collective to the settlement terms, all justify the firm's requested fees. Furthermore, the requested fee of $57,156.00 is significantly lower than the firm's fee lodestar of $101,195.00, supporting a determination of the reasonableness of counsel's fees.

13. The Court recognizes that Defendant has denied and continues to deny every allegation of liability and wrongdoing asserted in the Complaint as well as any violation of state or federal law related to the payment of wages. The Agreement, this Opinion and Order, all papers related to the settlement, and the settlement itself, shall not be used as a finding or conclusion by the Court or an admission by Defendant of any fault, wrongdoing, or liability.

14. Upon agreement by the parties at the fairness hearing, the Court's approval of the Settlement Agreement would render Defendant's Motion to Dismiss Untimely Consents (Doc. 64) moot.

15. **ACCORDINGLY, THIS _15th_ DAY OF JUNE, 2015, IT IS HEREBY ORDERED THAT:**

   a. The settlement of this collective action is **APPROVED** as it represents a fair and reasonable settlement of a *bona fide* dispute under the FLSA.

   b. The parties shall in good faith carry out all the terms of the Agreement.

   c. Without affecting the finality of the Judgment, the Court will retain jurisdiction over any disputes pertaining to the enforcement of the settlement.

   d. This action is hereby **DISMISSED WITH PREJUDICE**.

   e. Defendant's Motion to Dismiss Untimely Consents (Doc. 64) is **DENIED AS MOOT**.

   f. The Clerk of Court is directed to **CLOSE** this case.

Robert D. Mariani
United States District Judge